UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                                :
RAFAEL MOJICA,                                  :
                                                :
                              Petitioner,       :
                                                :
                                                :        00 Civ. 8933 (RJH) (KNF)
              -against-                         :
                                                :
BRIAN FISCHER, Superintendent, Sing Sing        :
Correctional Facility,                          :        MEMORANDUM OPINION
                                                :            AND ORDER
              -and-                             :
                                                :
ELIOT L. SPITZER, Attorney General of the       :
State of New York,                              :
                                                :
                              Respondents.      :
                                                :
-------------------------------------------------------------x
```

On October 23, 1996, following a jury trial in New York State Supreme Court,

Bronx County, Rafael Mojica ("Mojica") was convicted of one count of Murder in the

Second Degree in violation of New York Penal Law ("NYPL") § 125.25[1], and one

count of Criminal Possession of a Weapon in the Second Degree in violation of NYPL §

265.03. Following his conviction, Mojica was sentenced to concurrent indeterminate

terms of imprisonment of from twenty years to life on former charge, and five to fifteen

years on the latter charge. He is currently incarcerated at the Sing Sing Correctional

Facility in Ossining, New York.

Mojica now brings this petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, alleging that his conviction violated the Fourteenth Amendment because, among

other reasons, the trial court's jury charge impermissibly shifted the burden of proof to

petitioner, and the trial court's "initial aggressor" clause improperly allowed the jury to reject his justification defense. On October 29, 2004, Magistrate Judge Kevin Nathaniel Fox issued a Report and Recommendation (the "Report") recommending that Mojica's petition be denied. Mojica filed a timely objection to that recommendation and requested that the Court conduct a *de novo* review of the petition pursuant to 28 U.S.C. § 636(b)(1). Having done so, and for the reasons that follow, the Court denies the petition.

## I.       Standard of Review

A district court judge may designate a magistrate to hear and determine certain motions and to submit to the court proposed findings of fact and a recommendation as to the disposition of the motion. *See* 28 U.S.C. § 636(b)(1). Within ten (10) days of service of the recommendation, any party may file written objections to the magistrate's report. *Id.* Upon review of those portions of the record to which objections were made, the district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).[1]

The nature and depth of that review depends on the tenor and specificity of the objections. Where objections are "merely perfunctory responses," argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition," district courts should review a report and recommendation for clear error. *Vega v. Artuz*, 2002 WL 31174466, at *1 (S.D.N.Y. 2002); *see also Barratt v. Joie*, 2002 WL 335014, at * 1 (S.D.N.Y. Mar. 4, 2002) ("When a party makes only conclusory or general

---

[1] Where neither party makes a timely objection to the magistrate judge's findings, a district court "'need only satisfy itself that there is no clear error on the face of the record.'" *Johnson v. Reno*, 143 F.Supp.2d 389, 391 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985) (citations omitted)); *see also Bryant v. New York State Dep't of Corr. Servs. Albany*, 146 F.Supp.2d 422, 424-25 (S.D.N.Y.2001) (court may accept those portions of report to which no written objection has been made, so long as they are "not facially erroneous").

objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.") (citation omitted). On the other hand, where objections to a report are "specific and . . . address only those portions of the proposed findings to which the party objects," district courts should conduct a *de novo* review of the issues raised by the objections. *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan,* 806 F.Supp. 380, 381-82 (W.D.N.Y. 1992).

Petitioner objects to the Report on several grounds. Given the specific nature of the objections, the Court will review the Report *de novo* rather than for clear error.

## II.  Background

The facts leading to petitioner's arrest and incarceration are relatively straightforward, and are not in dispute. On April 4, 1994, petitioner shot and killed Joseph Esperon near the intersection of East Gunhill Road and Putnam Place in the Bronx. At the time of the shooting, Esperon was engaged in a verbal altercation with petitioner's brother over a debt of $20. (Report, p. 2). At some point during the exchange between Esperon and petitioner's brother, Esperon threatened to injure petitioner if the debt was not repaid. Petitioner's brother then retrieved a baseball bat and confronted Esperon, swinging the bat but missing him. (*Id.*, p. 3). Esperon responded by picking up a nearby garbage can and raising it above his shoulders as if to throw it at petitioner's brother. Before he could do so, he was fatally shot by petitioner, who had been watching the fight from a distance, apparently unobserved by Esperon and his brother. (*Id.*).

At trial, petitioner admitted to firing the shots that killed Esperon, but asserted that he was justified in doing so pursuant to NYPL § 35.15 because Esperon was about to strike his brother with a large metal garbage can. (*See generally*, Report, pp. 2-6;

Objections to Report, pp. 2-3 ("Obj.")).  At the conclusion of trial, the court charged the jury regarding the defense of justification under New York law.  The court explained that petitioner could use deadly force in defense of another if he reasonably believed that such force was necessary to defend himself or his brother against the imminent use of deadly force.  (*Id.*; Tr., p. 794).  Throughout the charge, the court made clear that it was the State's burden to prove beyond a reasonable doubt that petitioner was *not* entitled to the defense of justification.  (*See, e.g.*, Tr., p. 793).  The court also discussed the import of the initial aggressor exception, (*id.*, pp. 792-93), and the difference between "deadly force" and "ordinary force."  (*Id.*, pp. 790-791).

The court then explained the concept of reasonableness in the context of justification.  (*Id.*, p. 794).  In particular, the court told the jury that to claim justification, a defendant must reasonably believe *both* that (i) he or a third person is being or is about to be subjected to deadly physical force, and (ii) that the use of deadly physical force is necessary to defend him or that third person from the attack.  The court then said: "The law provides that even if [petitioner] reasonably believes both of the above, a person may, nevertheless, not use defensive deadly physical force if he knows that he can avoid it."  (*Id.*).  It is this statement that petitioner now challenges, on the ground that the utterance amounted to a "duty to retreat" charge, which the Court had previously promised not to give.[2]

According to petitioner, this statement violated the Fourteenth Amendment in two ways.  First, petitioner contends that it deprived him of the ability to present a defense at

---

[2] Over the State's objections, the court decided that it would not instruct the jury that petitioner had a duty to retreat before using deadly force, despite the fact that Section 35.15(2)(a) of New York's Penal Law provides that a person may not use deadly force if he knows that he can retreat with complete safety to himself and others.  (Obj., p. 3).

trial because his attorney had no opportunity to address the issue of retreat during his summation; and second, petitioner contends that the statement was an *incomplete* duty to retreat charge because it did not convey the fact that petitioner was obligated to withdraw *only* if he knew he could do so with "complete safety to himself and others," as required by NYPL § 35.1(2)(a).[3] Thus, petitioner argues that the state never proved beyond a reasonable doubt that he knew he could retreat with complete safety to his brother, as it would have been required to do had a duty to retreat charge been correctly given.

Following his conviction, petitioner advanced both arguments on appeal to the New York Appellate Division of the First Department. The First Department denied both claims after rejecting their shared premise, finding that the court's charge – and in particular, the statement noted, *supra* – did not amount to a duty to retreat charge:

> We reject defendant's argument that, by making reference to a duty to "avoid" the use of force, the court gave an inapplicable and incomplete instruction on the duty to retreat (Penal Law § 35.15 [2] [a]). On the contrary, the court was clearly using the term "avoid" in the context of instructing the jury as to the proper standard of reasonableness regarding defendant's behavior, in that, separately from the duty to retreat, Penal Law § 35.15 (1) permits the use of force only to the extent a defendant reasonably believes it to be necessary. This principle of law was clearly applicable to the facts herein, since it was a jury question whether defendant reasonably believed in the necessity of the *degree* of force he employed as opposed to a lesser degree of force.

*People v. Mojica*, 264 A.D.2d 693, 693 (N.Y. App. Div. 1st Dep't 1999). Having rejected this proposition, the court found the rest of charge to be "both legally correct and applicable to the facts," adding that, even if it were to find the charge to be erroneous, it

---

[3] NYPL § 35.15(2)(a) provides in fuller part:

> (2) A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:

> (a) The actor reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he or she knows that with complete personal safety, to oneself and others he or she may avoid the necessity of so doing by retreating . . .

would "find the error to be harmless in view of the overwhelming evidence disproving the justification defense." *Id*. On February 29, 2000, petitioner was denied leave to appeal the First Department's decision by the New York Court of Appeals. *People v. Mojica*, 94 N.Y.2d 905 (2000).

The instant petition followed.

**III.    Discussion**

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a state prisoner may not be granted unless "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding." *Davis v. Strack*, 270 F.3d 111, 132-33 (2nd Cir. 2001).[4]  Where a habeas petition is brought to challenge a state court jury charge, federal courts are to review the petition applying the standard first set forth in *Cupp v. Naughten,* 414 U.S. 141, 147 (1973).

In *Cupp*, a petitioner challenged his state court conviction on the ground that the trial court erred in giving the jury a so-called "presumption-of-truthfulness" charge, an instruction to the effect that witness testimony was to be believed absent some contra-indication, such as character or motive evidence. *Id.*, at 142-143.  The district court denied the petition, holding that the presumption-of-truthfulness instruction was proper under state law, and in any case "did not deprive petitioner of a federally protected constitutional right." *Id.*, at 143.  On appeal, the Ninth Circuit observed that the

---

[4]  There is no dispute that the Appellate Division's ruling in *People v. Mojica*, 264 A.D.2d, at 693, constituted an adjudication on the merits.

instruction "'ha[d] been almost universally condemned'" by the federal courts, primarily because it had the tendency to "place the burden on [defendants] to prove [their] innocence." *Id.*, at 144. For this reason, and relying on the Supreme Court's decision in *In re Winship*, 397 U.S. 358 (1970) that the Due Process Clause requires the State to prove guilt beyond a reasonable doubt, the Court of Appeals reversed. *Id.*, at 144-147.

The Supreme Court disagreed, even accepting that there was "a substantial unanimity among federal courts . . . that the instruction . . . ought not to be given in United States district courts". *Cupp*, at 146. Indeed, according to the Court, the question was not whether the instruction was "undesirable, erroneous, or even universally condemned", but rather whether it "violated some right which was guaranteed by the Fourteenth Amendment." *Id.*, at 146 (internal quotation marks omitted). In answering that question, the Court undertook a top-down analysis, guided by the principle that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.*, at 146-147 (citations omitted).

Applying this framework, the Court held that the charge in Cupp's case did not give rise to a constitutional violation. Although the Court acknowledged that "it would be possible perhaps as a matter of abstract logic" to conclude that the presumption-of-truthfulness charge may have, in some "tangential" respect, "impinge[d]" upon Cupp's right to proof beyond a reasonable doubt, *id.*, at 149, the Court was persuaded that no constitutional violation had occurred because the trial court "gave . . . explicit instructions affirming the presumption of innocence and declaring the obligation of the State to prove guilt beyond a reasonable doubt." *Id.*, at 147. It did not matter that these explicit instructions were not, as the Ninth Circuit had observed, "so specifically directed . . . to have effected a cure" of the allegedly erroneous instructions, *id.*, at 147; indeed,

according to the Court, "the question [was] not whether the trial court failed to isolate and cure a particular aging instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.*

For three reasons, the Court held that Cupp's challenge failed to meet that standard. First, in spite of the challenged charge, the Court observed that, in the context of the overall charge, the jury remained free to exercise its collective judgment "to reject what it did not find trustworthy or plausible", *Lind v. Artuz*, 2001 WL 262662, at *8 (S.D.N.Y. 2001) (citing *Cupp*, at 149-150); second, the jury was "instructed that a witness could be discredited by his own words", which might actually have aided petitioner since he did not testify, and could not therefore have directly contradicted any witness' account, *id.*; and third, the jury was "charged fully and explicitly about the presumption of innocence and the State's duty to prove guilt beyond a reasonable doubt." *Id.* For these reasons, the charge, even if erroneous, did not so "infect" the trial as to lead to a due process violation.

Subsequent to *Cupp*, the Supreme Court revisited the issue of habeas challenges to jury charges in several different contexts. *See, e.g.*, *Sandstrom v. Montana*, 442 U.S. 510, 514 (1979) (instructions that might reasonably have been understood by the jury as creating a mandatory rebuttable presumption are unconstitutional); *Francis v. Franklin*, 471 U.S. 307, 315 (1985). But none of these cases has strayed from the central premise of *Cupp*, that charges are to be considered as a whole, taking into consideration that "[o]ther instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge" in such a manner as to give rise to a Fourteenth Amendment violation. *Francis v. Franklin*, 471 U.S., at 315 (citing *Cupp*, at 147). These later cases also clarified that the habeas analysis "requires careful

attention to the words actually spoken to the jury" because the question "whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom,* 442 U.S., at 514.

Against this backdrop, the Court will consider petitioner's objections *seriatim*.

## A. The Alleged Duty to Retreat Charge

As noted, *supra*, petitioner argues that the trial court committed constitutional error by giving an incomplete charge on the duty to retreat. In his Report, Judge Fox rejected this contention. Petitioner now objects on the ground that the Report failed to apply the *Cupp* standard, and therefore did not consider whether the allegedly erroneous instruction "infected the entire trial," and, thereby, constituted a due process violation. *Cupp*, at 147. Instead, according to petitioner, the Report construed the petition as merely a challenge to the "content of a jury instruction about a defense created by state law," and concluded that such challenges can never give rise to federal habeas relief, citing *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2nd Cir. 2004) for that proposition. (Report, p. 8).[5] While the Report could be read in such a manner, the Court interprets the Report as concluding that while an erroneous jury instruction may give rise to a due process violation, in the present case the charge was not erroneous and, if erroneous, did not "infect" the entire trial as contemplated by *Cupp*. In reaching this conclusion, the Magistrate Judge was correct.

---

[5] In *DiGuglielmo*, petitioner-appellant challenged the *contents* of the justification instruction given at his trial, alleging that the charge did not comply with *state* law requirements. *Id*. After noting that New York's Appellate Division "ruled that, as a whole, the instructions at [petitioner's] trial properly set forth the law of New York," the court observed that it was not permitted to "second-guess that ruling." *Id*. Thus, in the absence of an additional *federal* ground for review, there was not a "proper basis for . . . habeas relief" in the case. *DiGuglielmo*, at 137.

### 1. The Charge was Legally Correct Under State Law

As noted, the justification charge being challenged by this petition included the statement that petitioner could not use "defensive deadly physical force if he kn[ew] that he [could] avoid it." In his objections, petitioner contends that this statement gave rise to a due process violation because it "impermissibly shifted the state's burden of proof" in two closely related respects. First, petitioner contends that the "duty to avoid" language imposed an additional "obligation" on petitioner (Obj., p. 6); and second, petitioner argues that the challenged sentence "eliminated the prosecution's burden to prove beyond a reasonable doubt" that petitioner knew "that he could retreat with complete safety to himself and others." (Obj., p. 7). The Court will consider these claims together.

Petitioner's first argument is premised on the proposition that the state court's charge "created a burden that does not exist under applicable New York . . . law by imposing an affirmative duty" on petitioner to avoid the use of force even if it was otherwise justified. (Obj., p. 6). According to petitioner, this meant that the jury was "foreclosed from considering" his justification defense if it found, "without reference to the crucial safety of petitioner's brother . . . that petitioner could have 'avoid[ed]' the use of deadly . . . force." (Obj., pp. 6-7). Similarly, petitioner's second argument is that the challenged portion of the charge "eliminated the prosecution's burden" to prove that petitioner knew he could retreat with "complete safety to himself <u>and others</u>". (Obj., p. 7) (emphasis added). According to petitioner, the elimination of this "central concept" – that petitioner was not obligated to retreat unless he knew he could so with safety to his brother – rendered the court's justification charge equivalent to "no charge at all." (*Id.*).

Both arguments are premised on the assumption that the trial court's statement was equivalent to a duty to retreat charge, albeit one that left out the "safety to others"

exception set forth at NYPL § 35.15(2)(a). Viewing the charge as a whole, this is not a compelling interpretation. Although the trial court clearly stated that petitioner could not use deadly force if he could "avoid it", this Court agrees with the Appellate Division that the trial court was "clearly using the term 'avoid' in the context of instructing they jury as the proper standard of reasonableness," *Mojica*, 264 A.D.2d, at 693, rather than in reference to a duty to *retreat*. The trial court saw it that way as well. (Tr., p. 835, 852-53 ("[T]he avoidance of the use of deadly physical force . . . is covered by reasonableness . . . of the behavior"). In other words, the question posed to the jury was whether petitioner "reasonably believed in the necessity of the degree of force he employed as opposed to a lesser degree of force." *Mojica,* 264 A.D.2d, at 693. The answer to that question was certainly relevant to the *reasonableness* of petitioner's decision to shoot and kill Esperon, and was therefore correctly included in the charge.

Having concluded that the charge was not the equivalent of a duty to retreat charge, and therefore not incorrect under state law, there is no merit to petitioner's claim that the burden of proof was shifted or lessened at trial.

### 2. The Challenged Portion of the Charge Did Not Infect the Entire Trial

In any case, even if the trial court's charge amounted to a duty to retreat charge, it did not "so infect the entire trial that the resulting conviction violates due process." *Cupp,* at 147. To be sure, justification is not an affirmative defense in New York, which means that the State "bear[s] the burden of disproving it beyond a reasonable doubt." *Davis v. Strack,* 270 F.3d 111, 124 (2nd Cir.2001) (citing N.Y. Penal Law §§ 25.00(1), 35.00); *In re Y.K.,* 87 N.Y.2d 430, 433 (1996); *see also People v. McManus,* 67 N.Y.2d 541, 546-47 (1986) ("whenever justification is sufficiently interposed by the defendant, the People must prove its absence to the same degree as any element of the crime

charged"). Thus, if as in this case a trial court decides that the justification defense is warranted based on the evidence, the defendant is entitled to a "clear and precise direction that the state had the burden of proving beyond a reasonable doubt that there was no justification." *U.S. ex rel. Tsirizotakis v. Lefevre*, 534 F.Supp. 40, 43 (E.D.N.Y. 1981); *In re Winship,* 397 U.S., at 364 (the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

Even assuming the challenged portion of the charge amounted to a duty to retreat charge, however, it did not impermissibly shift the burden of proof to petitioner. To the contrary, throughout the charge, the trial judge made clear the fact that petitioner had no obligation whatsoever with respect to his justification defense. (*See, e.g.,* Tr., p. 787, 797) ("As I have said, the burden is on the People to prove to your satisfaction beyond a reasonable doubt that the defendant did not, in fact, act in self-defense [or defense of his brother].")). This Court must assume, of course, that the "jury applie[d] the instructions it is given," *Chalmers v. Mitchell*, 73 F.3d 1262, 1267 (2nd Cir. 1996), which means that it is simply not "reasonably likely" that the jury applied the allegedly erroneous instruction in a manner that shifted the burden of proof to petitioner. *Chalmers v. Mitchell*, 73 F.3d 1262, 1267 (2nd Cir. 1996).

**B. Initial Aggressor Charge**

Petitioner next objects to the Report on the ground that the trial court's "initial aggressor" charge "improperly permitted the jury to reject petitioner's justification defense." (Obj., p. 8). This claim is more fully stated in the memorandum of law in support of the petition:

> [NYPL § 35.15] makes the defense of justification unavailable to an actor who . . . first uses offensive force without cause. . . It is the prosecution's burden to establish beyond a reasonable doubt that the defendant was the initial aggressor. . . [T]he plain wording of the initial aggressor statute is that even if the third person is the initial aggressor, justification may be claimed as long as the 'actor' was not the initial aggressor . . . In this case . . .[the actor was] petitioner."

(Memo. of Law in Support of Petition, pp. 45-46 ("Pet. Memo.")).  Petitioner goes on to suggest that the court's charge should have contained the following sentence, found in the model charge located at Criminal Jury Instructions (N.Y.) § 35.15(2)(a) at p. 869:  "So long as he is justified in reasonably believing that the other person is using, or is about to use, deadly physical force upon him, he is not the initial aggressor even though he strikes the first blow or inflicts the first wound."  According to petitioner, this "essential component of the initial aggressor charge" was "clearly relevant" since petitioner asserted at trial that he was justified in inflicting the first wound.

It is simply not correct that the trial court "ignored" this aspect of the initial aggressor exception.  To the contrary, the trial court explained:

> The law provides that a person who is the initial aggressor, that is, the one who first uses offensive deadly physical force may not avail himself of the defense of self-defense. . . . [I]n determining who is the initial aggressor, I repeat to you, that [neither] verbal quarrels [nor] . . . abusive language . . . justify the use of physical force, deadly or otherwise. . . . Generally speaking, the person who takes the offensive, [when] he is not himself being or is about to be attacked and strikes or attempts to strike the first blow is the initial aggressor.  *And the actual striking of the first blow or inflicting of the first wound is not in itself a determinative of the question who was the initial aggressor.  One who reasonably believes that another person is about to use deadly physical force upon him need not wait until he is struck or shot.  He may in such circumstances use deadly physical force defensively.*

(Tr., pp. 792-93) (emphasis added).  The italicized portion of the excerpt clearly conveyed the message that petitioner could not be considered the initial aggressor if he "reasonably believes that another person is about to use deadly physical force."  (Id.).

Although the court explained this concept with reference to a single individual, immediately before this explanation the court had noted: "A person may use deadly physical force against another person when he reasonably believes that such use of deadly physical force is necessary to defend himself or another. [In the case of petitioner], the behavior [he] engaged in . . . [was the] defense of another, namely, the defense of his brother." (Tr., pp. 790-91). It was, of course, entirely obvious that petitioner was not defending *himself* when he shot Esperon, which left the jury with only one sensible interpretation of the phrase, "*one who reasonably believes that another person is about to use deadly physical force upon him need not wait until he is struck or shot*," namely, that petitioner could strike first if he reasonably believed that *his brother* was about to be subjected to deadly physical force.

For this reason, and having considered the charge as a whole, the Court concludes that petitioner has failed to demonstrate either that the initial aggressor explanation was erroneous as a matter of state law or that the charge violated "some right which was guaranteed to [him by] . . . the Fourteenth Amendment." *Cupp*, at 146. Thus, petitioner has not stated a claim on which habeas relief can be granted. *See Marshall v. Lonberger,* 459 U.S. 422, 438, n. 6 (1983).

### C.  Right to Present a Defense

Petitioner's final argument, based on the Supreme Court's decision in *Herring v. New York*, 422 U.S. 853 (1975), is that the trial court's charge undermined the effectiveness of his justification defense because his counsel was not on notice that the trial court was going to give a duty to retreat charge and, therefore, he did not address the issue of retreat in his summation. Having ruled, *supra*, that the trial court's charge did

not amount to a duty to retreat charge under NYPL § 35.15(2)(a), and was therefore not erroneous as a matter of state law, the Court concludes that petition was not deprived of his right to present a defense.

## IV.  Conclusion

For the reasons set forth above, the petition is DENIED.  The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
      September 12, 2005

Richard J. Holwell
United States District Judge